Mr. Justice Huger
delivered the opinion, of the court.
On the trial below, I directed the jury to allow the de» fendant an abatement for the deficiency in the quantity of the land, on the authority oí cases which go as far back as the judicial proceedings of this state are known; and that these decisions were professedly bottomed upon a rule or principle borrowed from the civil law, and unknown to the pmmon law.
In the case of Gray and the Executors of Handkinson, decided in 1790, (1 Bay, 278,) which was an action of debt on a bond given for a tract of land, to which, at the sale, a mill-seat had been represented as attached, and which was afterwards discovered by a re-suryey to belong to another, the defendant contended as the object of his purchase had been defeated, be was entitled to' a recision of the contract j and his defence1 was sustained by the court.
Chief Justice Rutledge, in delivering the opinion of the court observed, “ that the rules of the civil law, which had been incorporated with, the common law on this head, were of excellent use in determining questions of this nature.”1 4‘ The first was,” he goes on to observe, “ that wherever the defects of a thing sold were so great as to render it unfit for the use the purchaser intended, and the seller repre» sented in such case, the contract ought to' be rescinded and secondly, where the defects were not so great as to warrant a recision of the sale in toto, then such an abatement of the price ought to be made as might be just and ¡reasonable, according to the nature and extent of the defects.” By these rules the jury were left to judge of the case before them. They found a verdict for the defendant, and that verdict was sustained. The venerable and learned Judge who reported this case observes ip a note, that a number of cases have been determined upon the same principle., both for defects in the quantity and qufdr *124 ty of land, and for unsoundness and defects in negroes and other personal property. ' -
In the case of the State vs. Gaillard (2 Bay 11) in 1796, which was also ad action of debt, on a bond given for a tract of land which had been represented, at the sale, as containing a greater number of acres than were found on a re-survey, with a stream of water running through it, the jury found a verdict for defendant, arid thereby rescinded the contract. On an appeal, Mr. justice Burke, who delivered the unanimous opinion of the court, observed, that the principles upon which that and similar cases had been determined were borrowed from the civil law, and now made a part of' the common law of this country.— He then quotes the very words of Domat, (1 vol. p. 80, 81,) “ that a sound price deserves a sound commodity,” and that wherever there is a failure of consideration, a misrepresentation or concealment of material circumstances, it will vitiate the contract’fra toto, or entitle the party injured to such a reasonable abatement in the price of the. thing sold, as will compensate him for the misrepresentation, &c. • - •
'■ In the case of Sumter vs. Welsh, decided in 1804, (2 Bay, 558,) which was an action of assumpsit on a note given for land, the defendant insisted upon a pro rata abatement for the ascertained deficiency in ■ the quantity of the land. It was allowed- by the jury; and on a motion for a new trial, the verdict was sustained, (all the judges present), on the ground that the consideration hád failed.
So in the case of Adams & Wylie (1 Nott & M'Cord 78) decided as late as 1818, where an action was brought on two bonds which had been given for the purchase of a tract of land, this court, on an appeal, decided, that the defendant was at liberty to plead or give in evidence, on a discount, a misrepresentation of the land. The Judge who delivered the opinion of the court, observed, that ever since the case of Gray and Executors of Handkinson, it had never been disputed that a deficiency -in the quantity-,.or defect in the quality of the land, where there had been a representation, are *125 legitimate grounds for a deduction of price or recision of the contract, as the case ma)’ be.
Motion for a new ü-ial from Darlington district.-
Action of covenant, tried before Mr. Justice Bay. The covenant upon which-the action was founded, was contained in a deed of bargain, .sale and release, from the defendant to the plaintiff, (in consideration of !g 500) of 150 acres of land, more or less.
The deed pursues the form prescribed by the act, and sets forth that-the defendant has granted, and doth grant, &c. to the plaintiff the said ?and, situated, &c. “ on Hurricane creek, containing a mill seat, with a dam, and timber ready for building: which mill seat, dam,po?id, timber,. ami all other appurtenances to the said premises belonging1,1 do hereby warrant and defend to the said Hugh hide, his heirs and assigns forever.’'
*125 However dissatisfied I may be with the principles recognized in these cases, I do not feel myself at liberty, now, to interfere with decisions so uniform and so long established . They have been so completely incorporated into our system that more injury is to be apprehended bjr ibrpibly rending them from their present naturalized station, than from any evils they may occasionally produce in practice. Had the rules of the common law not been interpolated, I should have been the' better pleased; but I am satisfied that this court will always best perform its duty, and effect most good, by adhering to established principles and decided cases.
On the first ground, therefore, I am of opinion that the motion must fail.
On the second ground, it is only necessary to observe that the master being the agent of the parties, for whose benefit the sale is made, they arc as much bound by his representation as they could have been by their own.
In the case of the State vs. Gaillard, already referred to, the land had been sold by the commissioners of confiscated estates, and yet the court regarded their representation as a warranty on the part of the state, and rescinded the contract.
The motion is dismissed.
Justices Golcock, Nott, Gantt and Richardson, concurred.
ALL the Judges present except Justice Wilds, sick.
It appeared in evidence that after the plaintiff purchased the premia ses, he erected saw and grist mills on the same site whereon a mill had formerly stood, and which was referred to in the deed; and that the pond of water was not raised to a greater height than it had formerly been; but the water flowed back upon, and inundated some land which belonged to Samuel Benton, who brought tpi actioq. against the plaits-tiff'for overflowing his land.
Upon the investigation of Benton’s claim, it appeared that he was entitled to the laud which one half of the -mater in the mill-pond covered¿ But not to any part of the land mentioned in the deed of conveyance from .the defendant to the plaintiff.
Benton re'coyered a verdict against the plaintiff for $51000, to be released, upon condition that he would forthwith draw off the water from Benton's land. In consequence of which, he was compelled to reduce his dam so as to leave a head of water not above three feet high, by which his saw-mill was rendered entirely useless.
It further appeared that the plaintiff could not erect a mill on a more advantageous situation any where on the said land.
Sir. Justice Bay was of opinion, and so charged the jury, that the plaintiff was not entitled to recover, since their was no deficiency of the quantity of acres conveyed, and since there was on the land conveyed, a mill seat, dam and pond.- and that the covenant or warranty should be construed to extend only to the appurtenances to the land appertaining, and not to advantages or conveniences adjoining or adjacent to the land, or to the capability or sufRciency of the water-pond, or dam.
Verdict for the defendant.
Witherspoon, in support of the motion, /contended, that it would appear, from a proper construction of the deed of bargain and sale, that the defendant had covenanted to convey to the plaintiff, by the words mill-seat, dam, and pond, a right to appurtenances which did not belong to the land; and that the plaintiff purchased the land under an expectation that he should thereby acquire the possession and enjoyment of sufficient head of water to turn a saw mill. That the water was not raised by him beyond its former height. That the pond was warranted to him according to its former limits or extent. That it was unknown So him when he made the purchase that it extended beyond the limite of the land purchased, and flooded the land of Mr. Benton. He purchased under the belief tlfat it did not, and under the impression that at all events the defendant was bound to warrant the premises as represented. That although the defendant could not covenant to indemnify him in committing a trespass on his neighbour’s land, yet he could covenant, and had done so, that on the land there was a mill seat and a pond of water sufficient to work a miü? and that this covenant he had Slot kept, See. Deeds ought to be construed liberally, 'at res magis net-teat quam pereat. 2 Wile. 75-8.
Blanding, contra.
Deeds might to be construed according to the intention of the parties. The words, “ with the appurtenances to the said premises belonging,” shew the intent, and cannot be construed in reconciliation with a warranty of any convenience or advantage not appurtenant to the land itself — to the estate conveyed. To extend the meaning of such a warranty to appurtenances of other lands adjacent to the land conveyed, would be absurd and dangerous. The land in question did possess the appurtenances in the deed particularly mentioned. On it was a mill-seat, a dam, and a pond; The warranty was not intern ded to apply to the goodness or sufficiency of the mill seat, &c. Of _ ¿hese, the purchaser was as capable of judging as the Seller.
Mr. Justice Smith
delivered the opinion of the Court.
It appeared in evidence that the pond, when reduced so as to draw off the water which flooded Benton's land, was insufficient to turn a mill It is evident the parties both contemplated the erection of a mill on the premises, and the use of the land according to its former dimensions.— The fair construction of the contract is, that the warranty was meant to extend to the whole mill-pond, according to its former capacity and extent. It is clear that the plaintiff could have intended nothing else. — . It appeared in evidence that the'land without the mill-seat was comparatively worthless. The parties, neither of them, it is fair to conclude, knew that the water, by reason of the dam, was raised so as to overflow the land of Mr. Sentón ,• and especiallv, because Benton had never before complained of it, or objected to the stopping of the water. But the'plaintiff is under the necessity of contracting the pond in order to avoid trespassing on'the land of his neighbour, in such a manner, that it is of no use to him in respect to the main object, of the contract. He' has, therefore, been deceived as to the prime object in making’ the purchase. The principal consideration has failed. His views and expectations have been disappointed, and he has sustained a considerable loss in consequence of the contract. This loss is imputable to the defendant. It has happened in consequence of his representation and warranty. The plaintiff does not appear to have telied on his own judgment or information, as to the sufficiency of the ponds he relied on the defendant’s warranty. It was generally known oY believed that the pond was sufficient for a mill, and a mill had been formerly in operation on the place. The words of the warranty, under the circumstances of the case, were calculated to raise the expectation that the. whole pond was included in the limits of the land conveyed. That this must have been the impression of the plaintiff, is clear from evidence, dehors the .deed. This evidence ought not to weigh in contradiction to the deed, - or to vary its meaning, if plainly deducible from the deed itself. But evidence was admissible to shew that there Was no mill-seat, &c. and in *128 shew that there was a breach of warranty. The evidence did show that there was no pond sufficient to turn a mill appurtenant to the land, and consequently that the land did not contain a mill-seat; for without a sufficient head of water, there cannot be a mill-seat. It was therefore! proved that the defendant was liable for a breach of warranty, and that the plaintiff was entitled to damages.
The opinion and charge of the presiding Judge Was incorrect. — ■ Wherefore the verdict must be set aside, and a new trial awarded.